## Livingston County, et al. v. Dunn.

(Decided June 17, 1924.)

### Appeal from Livingston Circuit Court.

1. Highways—Order of County Court Held Not Final Establishing Change in Road.—Order of county court, "considered and adjudged by the court that the said proposed change should be made at as early a date as practicable," followed by appointment of viewers and an order to survey and fix location of road, held not final order establishing change in road, there being no consent by fiscal court, under Ky. Stats, section 4301, and county was not bound by order.

2. Highways—Order of Fiscal Court Providing for Taking of Strip
   60 Feet Wide Held Not Approval of Order of County Court to Take
   40-Foot Strip.—Order of fiscal court; providing for taking of strip
   of land 60 feet wide, held not approval of prior order of county
   court to take strip 40 feet wide, under Ky. Stats., section 4301,
   and order of county court in first proceeding requiring fencing by
   county was not binding on county as to 60-foot road.

J. R. WELLS for appellants.

CHAS. FERGUSON and J. M. MONTGOMERY for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

In January, 1919, S. C. Taylor, et al., filed a petition in the Livingston county court for a change of a portion of the public road from Smithland to Paducah as follows:

> " . . . Beginning at some point near the residence of Frank Presnell and then leaving the present public road going to the left thereof, first passing over the lands of C. B. Davis, then the lands of L. H. Adams and L. D. Adams, then over the lands of S. C. Taylor, crossing the old road at the point near the S. C. Taylor residence, then passing over the lands again of S. C. Taylor, then passing over the lands of L. H. Adams and L. D. Adams, and lastly passing over the lands of C. M. Hollingsworth to a point in the public road as now established, said change to be made as surveyed and staked by the state road engineer or any other good and competent surveyor."

At the March term, 1919, it was adjudged by the court as follows, after setting out the facts before the court:

> "It is therefore considered and adjudged by the court, that the said proposed change should be made at as early date as practicable, that the state road authorities be notified by this court of this work and asked to furnish a competent surveyor to survey and lay out same and C. E. Bussey and J. B. Thompson be, and they are hereby appointed as viewers to view and assist any surveyor that may be furnished by the State Road Department in laying out said road, but before entering upon the discharge of their duties as such, they will be duly sworn as by law re-

quired. (Here follows description of the road as given in the petition.)

"Said road to be surveyed and staked out 40 feet wide, the entire distance, and said commissioners will report their acts and deed herein in writing at the next term of this court. It further appearing to this court that the land for the said proposed road is to be given and donated by the owners thereof, free of charge, to the county of Livingston, but that said county shall build for each of them the fencing made necessary because of said change, said fence to be built by Livingston county on each side of said road through their said lands and the court being sufficiently advised adjudges that said Livingston county pay for and have built said fencing as petitioned for and the gates be erected therein at such places as the petitioners or land owners may designate at the time said fence is being built."

By section 4301, Kentucky Statutes, this order of the county court was "subject to the consent and approval of the fiscal court." The viewers did not act. No further steps were taken in the case. On August 8, 1921, the fiscal court entered this order:

"Moved and seconded that the contract made with Adams Bros., heretofore in their petition filed in the Livingston county court, be and the same is now by this court accepted and will be carried out insofar as it follows the course set out in said road motion of said Adams Bros., except that said road is to be 60 feet wide instead of 40 as mentioned in the petition and contract of Adams Bros."

Between March, 1919, and August, 1921, the project of improving the road as a state highway then contemplated by the parties, had been abandoned and the project of improving the road as a federal highway had been undertaken. For this reason the fiscal court stipulated that the strip should be 60 feet instead of 40, as adjudged in the county court. On August 12, 1921, the fiscal court, through the county attorney, filed a petition in the Livingston county court seeking to condemn the strip 60 feet wide over the lands referred to. C. E. Bussey had bought from S. C. Taylor his tract and had afterwards gone into bankruptcy. Bussey and his trustee in bankruptcy were made defendants to the petition and in that proceeding on August 29, 1921, the amount of compensa-

tion for the taking of the strip through this tract, by judgment duly entered, was fixed at $200.00   The fiscal court on October 6, 1921, made an order allowing this claim, but the money has not been paid owing to some controversy as to who was entitled to it.   Appellee D. A. Dunn bought the Taylor tract at the bankrupt sale and on the 10th of August, 1922, instituted this proceeding against the fiscal court to obtain a mandamus requiring it to build the fences through his tract as provided by the order of the county court above quoted.   The fiscal court filed an answer setting up the proceedings above referred to and alleging that the land was not taken for a state highway as proposed in the original county court proceeding, but was taken under the second county court proceeding for a federal highway; that the strip taken was not the same as the strip mentioned in the first proceeding; that it was not only 20 feet wide, but at places. did not follow the same route, and that the first proceeding had in fact been abandoned by the parties and had never been carried into effect.   The only order made in the first proceeding, except that above quoted, was an order striking it from the docket on February 6, 1922. The fiscal court by its answer pleaded the facts above stated.   The circuit court sustained a demurrer to the answer and entered judgment for the plaintiff as prayed in their petition.   The fiscal court appeals.

. The order of the county court of March 3, 1919, was not a final order establishing the change in the road.   It was simply ''considered and adjudged by the court that the said proposed change should be made at as early a date as practicable.''   To this end viewers were appointed and a survey was ordered to fix the location of the road, but there was no final judgment, for the road had not been located.   The order of the fiscal court did not consent to the order of the county court.   The order of the county court provided for the taking of a strip 40 feet wide on certain terms.   The order of the fiscal court provided for the taking of a strip 60 feet wide on the same terms.   This was not an approval of the order of the county court but was a proposition to take the 60 foot strip on the same terms as the petitioners had offered to give a 40 foot strip.   The petitioners at no time accepted this offer of the fiscal court; they took no action upon it, and nothing further was done in the county court in that proceeding except to dismiss it on February 6, 1922.   The fiscal court acquired the strip under

the judgment rendered in the second proceeding instituted August 12, 1921, and in that proceeding no provision was made for the county to build any fencing. There having been no final judgment in the first proceeding and the fiscal court having failed to consent to or approve the order made in that proceeding, the county is not bound by the order entered therein. A liability against the county can only be created pursuant to the statute, and the liability asserted here not having been so created can not be enforced.

Judgment•reversed and cause remanded with directions to dismiss the petition.